[Civ. No. 6846.   Fourth Dist.   Sept. 6, 1962.]

LAWRENCE O. STRAND, Plaintiff and Appellant, v. ARTHUR C. CONNER, Defendant and Respondent.

Jones & Weldon, Chaffee, Pinnick & Martin and Wallace A. Pinnick for Plaintiff and Appellant.

Jacobs, Jacobs, Nelson & Witmer and Robert H. Jacobs for Defendant and Respondent.

SHEPARD, J.—This is an appeal by plaintiff from a judgment of nonsuit in a personal injury action.

## FACTS

The facts are undisputed. At about noon on August 23, 1959, on the Willowick Public Golf Course in Santa Ana, California, the vision was clear, although there may have been a slight overcast. Plaintiff and defendant were then and there playing golf in separate foursomes on holes three and four, of which the fairways were parallel and adjacent but on which the play was in opposite directions. The line between the two fairways was marked by a double row of small trees but there is no evidence of the width of the rough. Plaintiff had been playing golf about once a week for 45 years but this was his first play on this course. He was 69 years of age. There is no direct evidence of the condition of his hearing. It was apparently normal. The same is true of his eyesight. Defendant had been playing golf 31 years, had had some previous play on this course and his hearing was apparently normal. His right eye vision was clouded by a cataract but his left eye vision was 20-20. There is no evidence of the presence of caddies with either foursome.

Plaintiff's foursome was about midway between tee and green on the 4th hole. Plaintiff had played his second shot from a position between 20 and 60 feet from the edge of the 4th fairway nearest the 3d fairway and was standing behind a companion who was playing his second shot. Plaintiff was never on the 3d fairway at the time of the events complained of. The evidence indicates that each foursome was probably aware that players were on the adjacent fairway but neither paid specific attention to the actions of the other. There is no evidence that any members of either foursome intruded on the fairway of the other prior to the accident hereinafter related.

At the time of the accident defendant drove his ball from the tee of number 3 hole and endeavored and intended its direction to be straight down the center of number 3 fairway. Plaintiff was in plain sight of defendant and defendant was in plain sight of the plaintiff. Neither specifically looked at the other. Defendant, after completing his swing, kept his head down a short time. When he looked up and located the flight of his ball, it had already travelled about 180 yards of the estimated 200 yards to plaintiff, was about 12 feet high, looked like it was going over the head of plaintiff, and

it was too late to call a warning. No one actually saw the ball strike plaintiff's head but it is assumed by both sides that it did so.

Defendant at no time called, "Fore!" "Fore!" is a shout intended to warn another golf player of impending danger from a golf ball. While the evidence is not clear on the subject, we will assume, for purposes of this opinion, that it is appropriately given when other players are in the intended line of flight of a golf ball about to be played, of which intention the other players are unaware, or when a ball has been accidentally hit in the direction of another player and the call can be given in time to have some possible effect in allowing the one in danger to protect himself. There is no evidence in the case at bar that a call of "Fore" could have been formed in the vocal chords of defendant after his first sight of the ball and sent into the air, reaching the ear of plaintiff and giving him time to react soon enough to have had any effect on proximate cause.

## ASSUMPTION OF RISK

Defendant contends that a golf player assumes the risk of hazards of this kind when he enters into the game. Plaintiff takes the contrary view and that whether or not there was a duty to warn is a question of fact for the jury. Such cases as *Quinn* v. *Recreation Park Assn.*, 3 Cal.2d 725 [46 P.2d 144]; *Brown* v. *San Francisco Ball Club, Inc.*, 99 Cal.App.2d 484 [222 P.2d 19]; *Mann* v. *Nutrilite, Inc.*, 136 Cal.App.2d 729 [289 P.2d 282]; *Trauman* v. *City of New York*, 208 Misc. 252 [143 N.Y.S.2d 467]; *Benjamin* v. *Nernberg*, 102 Pa.Super. 471 [157 A. 10]; and *Andrew* v. *Stevenson*, 13 Scots Law Times 581; 31 Scottish Law Review 194, are cited by defendant in support of his view.

Plaintiff cites such cases as *Marston* v. *Pickwick Stages, Inc.*, 78 Cal.App. 526 [248 P. 930]; *Rush* v. *Lagomarsino*, 196 Cal. 308 [237 P. 1066]; *Johnson* v. *Western Air Exp. Corp.*, 45 Cal.App.2d 614 [114 P.2d 688]; *Strong* v. *Chronicle Pub. Co.*, 34 Cal.App.2d 335 [93 P.2d 649]; and *Oakes* v. *Chapman*, 158 Cal.App.2d 78 [322 P.2d 241].

We are unable to agree entirely with either plaintiff or defendant. ▮▮ It is perfectly true that a player of a game where many hazards develop from player errors which cannot be classified as negligent, does assume the risk of injury from many of these hazards. The citations given by defendant

clearly support this view. In each, however, the known customs of game play some part in this conclusion. For example, a person intentionally walking across in front of a player just about to swing on a fairway shot would undoubtedly assume the risk. On the other hand, if the player's ball were on the green ready to be putted, a person walking across on the far side of the green, even though this be a discourtesy, would not assume the risk of a ball driven from the green, for the rules and custom of the game strictly forbid anyone's driving a ball off the green itself.

In the case here at bar, there was no evidence that even the finest professional would be guilty of negligence in "pulling" a ball off the intended line of flight. This is well known to all golf players and any player does assume the risk of such a ball unless the driver of the ball sees the danger in time to give a warning when the person in danger can avert the result.

There is likewise no evidence that keeping one's head down after completing a golf stroke is negligence. There is no evidence that failure to have a caddy, whose duty is to mark the ball's flight, is negligence. There is no evidence that any action by defendant, after first seeing the line of flight of his ball, could have changed the final result.

Plaintiff's case cannot be based on speculation alone. (*Gray* v. *Southern Pacific Co.*, 23 Cal.2d 632, 644-645 [145 P.2d 561]; *Krause* v. *Apodaca*, 186 Cal.App.2d 413, 418 [5-8] [9 Cal.Rptr. 10]; *Eramdjian* v. *Interstate Bakery Corp.*, 153 Cal.App.2d 590, 602 [5-6] [315 P.2d 19].) There must be some evidence that there was negligence on the part of defendant, and that such negligence proximately caused or contributed to the plaintiff's injury. As was said in *Boynton* v. *Ryan*, 257 F.2d 70, at page 73,

". . . Further, we do not see any connection between a duty to shout 'fore' after the shot and the prevention of the plaintiff's injury. Golf balls travel at great speeds and can change directions suddenly. We have no showing that from the time it became apparent, if it ever did, that plaintiff was in danger of being hit, the defendant's warning, if he had a duty to give warning, would have made any difference. In the reported instances where the belated call has been given, the target has only had time to turn a more vital organ toward the flight of the ball."

In the absence of any evidence that the call of

"Fore" could have been of some aid to plaintiff under the circumstances, there was no question of fact to be decided by the jury and the judgment of nonsuit was correct.

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.